# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

REV. DR. WILLIAM J. BARBER II

    Plaintiff,

v.

AMERICAN AIRLINES, INC.

    Defendant.

No._____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1.    This is an action against American Airlines, Inc. ("Defendant") for discriminating on the basis of race when it removed Reverend Dr. William J. Barber II, an African-American minister and civil rights leader, from a flight from Washington, DC to Raleigh, North Carolina in violation of 42 U.S.C. § 1981.

2.    In forcibly removing Reverend Barber from the airplane without cause or justification, American Airlines denied Reverend Barber the right to be free from discrimination in the making or enforcement of a contract in violation of 42 U.S.C. § 1981. Reverend Barber brings this suit for declaratory relief, injunctive relief, and damages against Defendant to redress the injuries he suffered and continues to suffer as a result of Defendant's racially discriminatory conduct.

## PARTIES

3.    Reverend Barber is African American and a citizen of the United States. He resides in North Carolina.

4. Defendant American Airlines, Inc. ("American Airlines" or "Defendant") is a major airline corporation headquartered in Fort Worth, Texas and registered to do business in the State of Virginia. American Airlines primarily operates from hubs located throughout the United States, including Ronald Reagan Washington National Airport in Arlington, Virginia.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 127 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

7. Reverend Dr. William J. Barber II, who is African American, is a minister and civil rights leader. Since 1993, Reverend Barber has served as pastor of Greenleaf Christian Church in North Carolina.  Reverend Barber is also moderator of the Christian Church (Disciples of Christ) in North Carolina, a denomination comprised of over 100 churches state-wide.

8. Reverend Barber is the president of the NAACP's North Carolina state chapter, which is the organization's largest chapter in the South and the second-largest chapter in the United States. He has held elected positions on the NAACP's National Board, was chair of the NAACP's Legislative Political Action Committee, and has served as the Executive Director of the North Carolina Human Relations Commission.  He is a Visiting Professor at Union Theological Seminary in New York City.

9. Reverend Barber has received numerous awards and accolades for his service, including the highest citizenship award conferred by the Governor of North Carolina for public

and community service, the Order of the Long Leaf Pine. Reverend Barber was a prime-time speaker at the 2016 Democratic National Convention, speaking moments before Hillary Clinton accepted her nomination.

10.     Reverend Barber is routinely invited and travels to speaking engagements around the country. Traveling is difficult for Reverend Barber because he suffers from an advanced form of arthritis, ankylosing spondylitis, that, among other things, prevents him from rotating his neck or bending his left leg. Because of his disability, Reverend Barber must purchase two seats when travelling by airplane so that he can keep his leg extended for the duration of the flight.

11.     On the morning of April 15, 2016, Reverend Barber traveled to Washington, DC to give the keynote address at a national ecumenical conference. Reverend Barber booked American Airlines flight #5382 for his return trip home to North Carolina. The flight was scheduled to depart at approximately 10:20 p.m. on April 15, 2016.

12.     After giving his sermon, Reverend Barber left the conference hotel directly for the airport. Because he had to leave the hotel almost immediately after his sermon, Reverend Barber was still wearing his clerical attire when he arrived at his gate to board the flight.

13.     Reverend Barber boarded the airplane and took his seat. As was his custom, he had purchased the seat immediately to his left and when he sat, he extended his leg in front of the vacant seat. After sitting, he closed his eyes to rest as boarding continued.

14.     Two white male passengers sat in the seats directly behind him. They were laughing and talking loudly to each other and appeared to be intoxicated.

15.     Reverend Barber wanted to ask the men if they could keep their voices down, but, because of his disability, he could not rotate his neck to turn toward them while he was seated.

Reverend Barber rang the American Airlines flight attendant. The flight attendant was a white woman. Reverend Barber asked the flight attendant if she could ask the passengers sitting behind him to lower their voices.

16. Initially, the flight attendant was dismissive of Reverend Barber's request. In a flippant tone, the flight attendant told Reverend Barber that she could not prevent other passengers from talking. Reverend Barber clarified that he only wanted her to ask the men to refrain from talking loudly.

17. The flight attendant turned to the passengers sitting behind Reverend Barber and indicated that Reverend Barber wanted them to keep their voices down. When the flight attendant identified Reverend Barber as the complaining passenger, the passenger sitting directly behind Reverend Barber became even more belligerent and started hurling insults, negative comments, and expletives toward Reverend Barber.

18. The passenger exclaimed to the person who was sitting next to him that he did not like "those people," and that "those people" made him sick. Reverend Barber and other passengers who overheard the comments understood him to be referring to African Americans.

19. Reverend Barber remained calm in the face of the other passenger's racist hostility and attempted to ignore him as boarding continued.

20. A person who appeared to Reverend Barber to be an off-duty American Airlines pilot boarded the airplane and spoke to the flight attendant who had been dismissive of Reverend Barber's request for assistance. The flight attendant directed the pilot to the empty seat next to Reverend Barber.

21. The pilot walked over to Reverend Barber's row, put his belongings in the over-head bin, and asked Reverend Barber if he could take the aisle seat next to him. Reverend

Barber explained that he had purchased, and was using, both seats because of his leg. The pilot collected his luggage and walked away.

22. Shortly after the pilot left, an American Airlines agent approached Reverend Barber and asked to see Reverend Barber's boarding passes. Reverend Barber showed him the two boarding passes for the two seats he had purchased.

23. The comments from the passenger sitting behind Reverend Barber escalated after Reverend Barber's exchange with the agent. The passenger began making explicit statements about Reverend Barber's disability, mocking the fact that Reverend Barber needed two seats. At one point, he told the passenger sitting next to him that Reverend Barber was "so big that he could not fit in one seat."

24. Unable to turn his neck to talk to the passengers while seated, Reverend Barber stood to face the passengers. Reverend Barber politely asked the man sitting behind him to stop talking about him and to keep his voice down. In response, the man told Reverend Barber that he was purposefully speaking loudly so that Reverend Barber could hear what he was saying. He continued to make humiliating comments to Reverend Barber.

25. As the interaction progressed, it became clear to Reverend Barber that anything he said to the man would only agitate him further. Reverend Barber decided to end the conversation and told the man that he would pray for him. That statement angered the passenger even more.

26. The same flight attendant to whom Reverend Barber had complained earlier walked over and threatened to call the police. Reverend Barber calmly assured her that the situation was under control and he sat down.

27. The flight attendant left, and Reverend Barber closed his eyes to rest while waiting for the airplane to leave the gate. At this point, the passenger sitting behind him had stopped talking. The airplane was calm.

28. Reverend Barber had been sitting and there had been no further incidents for almost ten minutes when police officers boarded the airplane. An officer asked the passenger sitting behind Reverend Barber for a description of what happened.

29. When Reverend Barber asked for the opportunity to speak, the officer told Reverend Barber to stand and ordered him toward the jet bridge. When Reverend Barber reached the jet bridge, another officer told him that American Airlines had ordered him removed from the airplane.

30. The officer instructed Reverend Barber to walk with him toward the gate. Reverend Barber limped up the jet bridge to the gate area. Once at the gate, an officer took Reverend Barber's cane.

31. When Reverend Barber asked why he, and not the passenger who had been taunting him, was being removed from the flight, one of the officers stated that he had to remove the persons American Airlines directed him to, and that American Airlines did not request that the other (white) passenger be removed from the airplane.

32. A white standby passenger was given Reverend Barber's seat and the flight left for North Carolina without him.

33. An African-American employee of Defendant, who was present at the gate, told Reverend Barber that "this tends to happen a lot" and that she was "sick of American Airlines doing this." That employee then quietly rebooked Reverend Barber's flight for the following morning. American Airlines, however, did not offer Reverend Barber a hotel room or make any

other attempt to assist Reverend Barber after he had been unnecessarily removed from the flight.

34. Throughout the time he was on Defendant's aircraft, Reverend Barber was calm, complied with all directives from the flight crew, and did nothing that remotely warranted being ejected from the airplane.

35. On the other hand, the white passenger sitting behind Reverend Barber was loud, belligerent, and verbally abusive and offensive toward Reverend Barber. Passengers who overheard the interactions observed the difference between the calm and collected Reverend Barber and the disruptive and irate white passenger.

36. Nonetheless, American Airlines allowed the white passenger to remain on the flight, but removed Reverend Barber. This differential treatment was based on race, as other passengers noted and stated to American Airlines employees.

37. Unknown to Reverend Barber, American Airlines' decision to eject Reverend Barber from the airplane was reported to the press. Media reported that the airplane had taken off and had to turn around midflight so that Reverend Barber could be removed. Other news stories falsely accused Reverend Barber of causing the flight to be delayed. In the days that followed, national press outlets ran stories about Reverend Barber's ejection from the American Airlines flight, which exacerbated his humiliation and embarrassment.

38. In acting or omitting to act as alleged herein, Defendant was acting through its employees and/or agents and is liable on the basis of the acts and omissions of its employees and/or agents. In acting or omitting to act as alleged herein, Defendant's employees and/or agents were acting in the scope of their actual or apparent authority, and the alleged acts or

omissions of each employee and/or agent were subsequently ratified and adopted by Defendant as principal.

39. Upon information and belief, the discriminatory decision to remove Reverend Barber from his flight initiated with the American Airlines flight attendant and was carried out at the direction of and/or approved and/or ratified by a managerial agent of Defendant; under Defendant's authority, control, and supervision; and/or within the scope of the employees' employment.

40. Through the actions of its employees, agents, and/or representatives described above, Defendant American Airlines acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for Reverend Barber's federally protected rights.

## INJURY TO PLAINTIFF

41. As a direct result of Defendant's discriminatory conduct, Reverend Barber has suffered, and continues to suffer, humiliation, embarrassment, and mental and emotional distress. Reverend Barber's emotional injuries were exacerbated by the public nature of Defendant's conduct. Not only was Reverend Barber removed from the airplane in full view of other passengers, but Defendant's humiliating treatment was the subject of national news.

42. Additionally, Defendant's conduct caused Reverend Barber unnecessary physical distress. Because Defendant ejected Reverend Barber from his flight, he was forced to de-board the aircraft, stand at the gate without his cane, and repeat the process of having to walk through airport security and boarding the next morning, which are difficult tasks for Reverend Barber because of his disability. These additional tasks would have been unnecessary for Reverend Barber to perform if Defendant had allowed him to travel on the flight for which he purchased tickets.

43. Because Reverend Barber travels frequently, must travel by air, and has a number of travel restrictions because of his disability, American Airlines, which is one of the largest airlines in the country, is often the most viable option for him. However, he remains fearful that Defendant will single him out for negative treatment on the basis of his race in the future.

## CAUSES OF ACTION

### First Cause of Action—Violation of 42 U.S.C. § 1981

44. Reverend Barber realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45. Defendant's foregoing actions constitute a deprivation of Reverend Barber's right to make and enforce contracts on the same terms enjoyed by white persons, in violation of 42 U.S.C. § 1981.

## PRAYER FOR RELIER

WHEREFORE, Reverend Barber respectfully prays that this Court grant him the following relief:

(1) enter a declaratory judgment that the foregoing acts of Defendant violate 42 U.S.C. § 1981;

(2) enter a permanent injunction directing Defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3) award compensatory damages in an amount to be determined by a jury that would fully compensate Reverend Barber for the injuries caused by Defendant's conduct alleged herein;

(4) award punitive damages to Reverend Barber in an amount to be determined by a jury that would punish Defendant for its willful, malicious, and reckless indifference toward Reverend Barber's federally protected rights and that would effectively deter Defendant from engaging in similar conduct in the future;

(5) award Reverend Barber his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(6) order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 14, 2016                    Respectfully submitted,

/s/ Michael G. Allen
Michael G. Allen (VA Bar No. 25141)
John P. Relman*
Jia M. Cobb*
RELMAN, DANE & COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
Tel: (202) 728-1888
Fax: (202) 728-0848
mallen@relmanlaw.com
jrelman@relmanlaw.com
jcobb@relmanlaw.com

*Attorneys for Plaintiff*

*application for admission pro hac vice to be sought